IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK, N.A., | CIVIL ACTION FILE |
| Plaintiff, | NO. 1:08-CV-3202-BBM |
| v. | Judge Beverly B. Martin |
| JONATHAN BEEN, | |
| Defendant. | |

**JONATHAN W. BEEN'S ADDITIONAL STATEMENT OF FACTS WHICH ARE MATERIAL AND PRESENT A GENUINE ISSUE FOR TRIAL**

Jonathan W. Been ("Been") hereby submits the following Additional Statement of Facts Which Are Material and Present A Genuine Issue for Trial as follows:

1. In January of 2008, Atreus was the largest account in First Horizon's Atlanta office. (Deposition of Damon Pettirossi dated October 2, 2009 ("Pettirossi Dep.") p. 63:1-4; 122:2-7).

2. Atreus was also a model borrower—it never missed an interest payment of any of its fifteen (15) loans in the four years the parties conducted business. (Pettirossi Dep. p. 172:9-18).

3. Atreus was outpacing its competitors in the market. (Pettirossi Dep. p. 169:8-14).

4. Atreus' gross profit margin outperformed the industry. (Pettirossi Dep. p. 173:8-14).

5. All of the major Atlanta banks aggressively pursued Atreus' business. (Pettirossi Dep. p. 172:9-18).

6. Although the Notes required the borrower to pay the entire principal amount on or before the maturity date, First Horizon never once enforced this date with Atreus. (Affidavit of Henry Porter ("Porter Aff.") ¶ 6).

7. Over the course of three plus years, First Horizon routinely extended the Loans. (Porter Aff. ¶ 6).

8. First Horizon extended the Loan' maturity dates at least thirty-nine (39) times. (Porter Aff. ¶¶ 6, 36-50).

9. Whenever a loan reached maturity, First Horizon would simply have Atreus sign an extension agreement. (Porter Aff. ¶¶ 6, 36-50).

10. At times, First Horizon failed to present the extension to Atreus until after the loan matured. (Porter Aff. ¶¶ 8, 36-50; Affidavit of Sharon Walker ("Walker Aff.") dated November 5, 2009 ¶ 5).

11. On thirty (30) separate occasions, First Horizon allowed the Notes to mature before having Atreus sign an extension officially modifying the Loans' terms. (Porter Aff. ¶¶ 36-41, 44, 47-50; Walker Aff. ¶ 7-12, 15, 18-21).

12. When asked about the possible effect a past due loan has on First Horizon, First Horizon's regional manager, Damon Pettirossi, testified, "it's not the end of the world." (Pettirossi Dep. p. 140:10-15).

13. When a Note matured without having an extension agreement in place, First Horizon did not declare a default and demand immediate payment (as required by the loan documents). (Porter Aff. ¶¶ 6, 9).

14. Even after loans matured, First Horizon continued to pay Atreus' draw requests and collected interest as if the loan had not matured.

15. At the end of 2007, First Horizon decided to withdraw from the residential construction lending business. (Pettirossi Dep. p. 65:4-22).

16. In February of 2008, First Horizon began telling its borrowers that it would no longer lend new money for construction projects. (Pettirossi Dep. p. 219:5-16).

17. After First Horizon announced this decision, the regional managers were tasked with winding down the existing loan portfolios. (Pettirossi Dep. p. 70:14-25; p.1-15).

18. First Horizon's regional manager, Damon Pettirossi, testified that the bank never intended to call immediately due all of the current loans or refuse renewals. (Pettirossi Dep. p. 73:2-23).

19. Mr. Pettirossi explained "You know, the borrowers, we've had rolling extensions, 90 days, you move two units, we'll keep rolling it. You move two more, you move three, you pay down X, and we'll just keep rolling it [the loan], because that's showing progress." (Pettirossi Dep. p. 173:13-18).

20. During the second week of May, 2008, First Horizon's regional manager, Damon Pettirossi, met with Atreus' representatives at Atreus' office "to get a gauge of what they can do and what their projections are to wind down the relationship, exit the relationship." (Pettirossi Dep. p. 88:22-25).

21. Mr. Pettirossi explained he was there "to come up with a game plan that we could work with and live with and not have to extend for 30 days and all of these notes. Just have one continuous renewal." (Pettirossi Dep. p. 89:9-12).

22. At this point, six of Atreus' loans had matured (Loan 53341, Loan 53345, Loan 518016, Loan 518018, Loan 52372, Loan 52373)(collectively, the "First Loan Group"). (Porter Aff. ¶ 14).

23. First Horizon did not declare a default under the Notes or demand immediate payment. (Porter Aff. ¶ 15).

24. On May 12, 2008, Atreus executed Loan Extension Agreements extending the maturity dates of the First Loan Group to April 30, 2008. These extensions did not bring the First Loan Group current because the new maturity date had already come and gone. (Porter Aff. ¶¶ 18, 36-41. Been Dep., Ex. 106, 117, 129, 138,143, 173, and 184).

25. The May 12, 2008 extensions convinced Atreus that First Horizon would continue to honor the notes, renew as it had done in the past, and give them time to sell houses to pay down the notes. (Walker Aff. ¶ 3).

26. After Atreus executed the May 12, 2008 Loan Extension Agreements, it continued to perform under the First Loan Group even though they had technically matured by making interest payments and paying down principal. (Porter Aff. ¶¶ 36-41, 49, Walker Aff. ¶ 7-12, 21).

27. In late June of 2008, First Horizon approached Atreus about executing additional extension agreements to extend the maturity dates of the First Loan Group to July 1, 2008. (Porter Aff. ¶¶ 19-22).

28. First Horizon explained that it "needed to keep [the First Loan Group] from rolling at quarter end." (Pettirossi Dep., p. 139:20-25, p. 140:1-6, Ex. 33).

29. Atreus executed the Loan Extension Agreements on July 7, 2008. (Porter Aff. ¶ 22, Been Dep., Ex. 107, 112, 123, 131, 140, 144, 162, 179, & 183).

30. While the face of the document bears a June 20, 2008 date, Jonathan Been *received* the documents on or about June 27, 2008 and then *executed* them on July 7, 2008—this is evidenced on page 3 where he crossed out paragraph 8(a) and initialed and dated his signature. (Porter Aff. ¶ 22, Been Dep., Ex. 107, 112, 123, 131, 140, 144, 162, 179, & 183).

31. Been also signed and dated the Consent and Reaffirmation of Guarantor on July 7, 2008 (the July 7 Loan Extension Agreements and Consent and Reaffirmation of Guarantor are collectively, the "July Agreements"). (Porter Aff. ¶ 22, Been Dep., Ex. 107, 112, 123, 131, 140, 144, 162, 179, & 183).

32. On July 16, 2008, without any warning whatsoever, First Horizon sent Atreus letters alleging defaults in four (4) of the loans in the First Loan Group (the

"Four July 16 Letters") and claiming the loans were accelerated and immediately due and payable. (Porter Aff. ¶ 26, Ex. A).

33. First Horizon did not give Atreus any prior notice that First Horizon was sending the letters and Atreus was shocked to receive them because they had just executed the July Agreements a week earlier. (Porter Aff. ¶ 27).

34. The Four July 16 Letters did not give Atreus notice that First Horizon was enforcing the Loans' maturity dates, it simply stated the loans were accelerated and immediately due. (Porter Aff. ¶ 26, Ex. A).

35. By August of 2008, the other five loans that are the subject of this lawsuit matured under the notes' terms (Loan 518019, Loan 53346, Loan 53811, Loan 53812, Loan 53911)(collectively the "Second Loan Group"). (Porter Aff. ¶ 24).

36. First Horizon did not immediately demand payment. (Porter Aff. ¶ 25).

37. On August 14, 2008, First Horizon's representatives met with Atreus to "discuss [Atreus'] plan for liquidating the remaining inventory." (Pettirossi Dep., p. 106: 10-25, p. 107:1).

38. First Horizon's internal documents demonstrated it had already approved the extensions. First Horizon's internal credit memoranda demonstrate

that it had approved extending the Loans to at least October of 2008. (Pettirossi Dep., p. 207:21-25, p. 208:1-9, Ex 83 (bottom right hand states "Credit Approved Through (Date) 5/31/08, then 10/1/08")).

39. In October of 2008, First Horizon again met with Atreus' team to discuss Atreus' plan. First Horizon had filed this lawsuit on October 14, 2008, before the October 22 meeting, but neglected to tell the Atreus representatives about the suit during the meeting. (Porter Aff. ¶ 32).

This 5th day of November, 2009.

/s Stephanie A. Everett
SIMON H. BLOOM
sbloom@bloom-law.com
Georgia Bar No. 064298
Stephanie A. Everett
severett@bloom-law.com
Georgia Bar No. 253075

THE BLOOM LAW FIRM, LLP
100 Peachtree Street, Suite 2140
Atlanta, GA 30303

Counsel for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK, N.A.,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN BEEN,<br><br>Defendant. | CIVIL ACTION FILE NO. 1:08-CV-3202-BBM<br><br>Judge Beverly B. Martin |

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1.B

Counsel for Defendant Jonathan Been hereby certifies that this pleading was prepared in Times New Roman font, 14 point, in compliance with Local Rule 5.1.B.

This 5th day of November, 2009.

/s Stephanie A. Everett
Simon H. Bloom
(sbloom@bloom-law.com)
Georgia Bar No. 064298
Stephanie A. Everett
(severett@bloom-law.com)
Georgia Bar No. 253075

THE BLOOM LAW FIRM, LLP
100 Peachtree Street, Suite 2140
Atlanta, Georgia 30303
Tel: 404-577-7710
Fax: 404-577-7715

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK, N.A.,<br>Plaintiff,<br>v.<br>JONATHAN BEEN,<br>Defendant. | CIVIL ACTION FILE<br>NO. 1:08-CV-3202-BBM<br><br>Judge Beverly B. Martin |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have electronically filed JONATHAN W. BEEN'S ADDITIONAL STATEMENT OF FACTS WHICH ARE MATERIAL AND PRESENT A GENUINE ISSUE FOR TRIAL using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Kevin Scott Kovalchik
kkovalchik@tokn.com
Aaron Marcus Kappler
akappler@tokn.com
John Patrick O'Brien
pobrien@tokn.com
Thompson O'Brien Kemp & Nasuti, P.C.
40 Technology Parkway South
Suite 300
Norcross, GA 30092

James L. Paul, Esq.
Jimmy.paul@chamberlainlaw.com
Chamberlain, Hrdlicka, White, Williams & Martin
191 Peachtree Street, N.E., 34th Floor
Atlanta, GA 30303

This 5th day of November, 2009.

/s Stephanie A. Everett
Stephanie A. Everett
Georgia Bar No. 253075